**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Criminal No. 05-CR-443-16** |
| v. | : | |
| | : | **(Chief Judge Kane)** |
| TANA ADKINS, | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM**

I.   **INTRODUCTION**

Pending before the Court is Defendant Tana Adkins's motion to withdraw her guilty plea, which she entered on May 3, 2006, pursuant to a plea agreement with the United States.  In accordance with the plea agreement, Defendant pleaded guilty to Counts I and III of a superseding indictment.  Count I charged Defendant with conspiring to engage in interstate prostitution, in violation of 18 U.S.C. § 371.  Count III charged Defendant with conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h).[1]  Upon entry of Defendant's guilty plea, the Court ordered preparation and disclosure of a presentence report and scheduled sentencing for August 14, 2006.  According to Defendant, the presentence report calculated Defendant's guideline range at 168 to 210 months.  The report recommended that the Court increase the base offense level for the conspiracy count contained in Count III on the basis of U.S.S.G. § 2G1.3 to account for two victims who were less than 16 years old.[2]  Defendant filed

---

[1]  Defendant was also charged with interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952 (Count II) and a count seeking forfeiture of property involved with the money laundering offenses and conspiracy, pursuant to 18 U.S.C. § 982(a)(1).  Pursuant to the terms of her plea agreement, the United States has agreed to move to withdraw these remaining counts at sentencing.  (Doc. No. 331, Plea Agreement, ¶ 1.)

[2]  Although Count III of the superseding indictment charged Defendant with conspiracy to engage in money laundering and not an offense directly related to interstate prostitution, the

objections to the report on August 29, 2006.  On October 4, 2006, Defendant moved to withdraw

her guilty plea, principally due to the sentencing recommendation set forth in the presentence

report.  Defendant alleges that the recommended guideline range of 168-210 months is well in

excess of a range of 36 to 42 months that Defendant and the Government discussed as a possible

range pursuant to a guilty plea.  The Government agrees that this initial range was discussed

without the parties contemplating that an applicable cross-reference for involvement of juveniles

would be triggered as Defendant had no personal involvement with the juveniles.

Defendant has advanced three arguments in support of her motion to withdraw her guilty

plea.  First, she contends that she was not personally involved in prostituting juveniles.  Second,

Adkins asserts that she was using psychotropic drugs at the time of her guilty plea, which caused

her to be "confused and mentally distraught" at the time she entered her plea.  Finally, Adkins

asserts that she pleaded guilty based upon her understanding that she would receive a sentence of

between 36 and 42 months imprisonment.

---

presentence report recommended application of U.S.S.G. § 2G1.3 on the basis that the proceeds
that were the subject of the money laundering charge were derived from interstate prostitution,
including offenses proscribed in 18 U.S.C. §§ 2241 or 2242.  The guideline for the money
laundering count is U.S.S.G. § 2S1.1(a)(1), which directs that the base offense level is the
offense level for the underlying offense from which the laundered funds were derived, if (A) the
defendant committed the underlying offense and (B) the offense level for that offense can be
determined.  In this case, the presentence report finds that the underlying offenses are 18 U.S.C.
§§ 2241 (conspiracy to transport individuals for the purpose of engaging in prostitution) and
2242 (persuading, inducing, enticing, or coercing individuals to travel to engage in prostitution).
Because the presentence report contains a finding that minors were victims of these underlying
offenses, the presentence report refers to U.S.S.G. § 2G1.3 to determine the recommended
offense level.  Section 2G1.3(c)(3), in turn, indicates that if the offense level involved conduct
described in 18 U.S.C. §§ 2241 or 2242, courts should refer to U.S.S.G. § 2A3.1, if the resulting
offense level is greater than that determined in § 2G1.3.  Accordingly, the presentence report
concludes that the Court should refer to U.S.S.G. § 2A3.1 to determine Defendant's base offense
level on Count 30.  The Court makes no finding regarding the proposed application of the
sentencing guidelines as part of this memorandum.

II.   **DISCUSSION**

Federal Rule of Criminal Procedure 32(e) provides, in relevant part, that "the Court may permit the plea to be withdrawn if the defendant shows any fair and just reason."  Fed. R. Crim. P. 32(e).  A criminal defendant "has no absolute right to withdraw a guilty plea" under this Rule. United States v. Martinez, 785 F.2d 111, 113 (3d Cir. 1986).  A motion to withdraw a guilty plea is entrusted to the discretion of the district court, and the district court's refusal to allow a defendant to withdraw a guilty plea will be overturned on appeal only if the district court has abused this discretion.  United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001).  In general, courts typically consider three primary factors in reviewing a motion to withdraw a guilty plea: "(1) whether the defendant asserts her innocence; (2) whether the government will be prejudiced by withdrawal; and (3) the strength of the defendant's reasons for moving to withdraw." Martinez, 785 F.2d at 114 (quoting United States v. Trott, 779 F.2d 912, 915 (3d Cir. 1985)); see also Brown, 250 F.3d at 815; United States v. Jones, 979 F.2d 317, 319 (3d Cir. 1992); United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989).  Additionally, "[a] simple shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to force the government to incur the expense, difficulty and risks of trying a defendant, who has already acknowledged his guilt before the court."  Jones, 979 F.2d at 318.  Upon consideration of the foregoing guidelines and factors, and following careful consideration of Defendant's offered reasons for moving to withdraw her plea, the Court will deny Defendant's motion.

First, to the extent Defendant is arguing that she should not be held accountable for the illegal acts of other members of the conspiracy to which she has pleaded guilty because she herself was not personally involved in such acts, Defendant's argument fails as a matter of law.

It is well-settled that an individual who voluntarily joins a criminal conspiracy may be charged with the conduct of other co-conspirators so long as such acts were reasonably foreseeable and in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 647-48 (1946) (a co-conspirator is criminally liable for the acts of other members of the conspiracy that were taken in furtherance of the conspiracy and reasonably foreseeable as a necessary and natural consequence of the conspiracy); United States v. Pojilenko, 416 F.3d 243, 248 & n.5 (3d Cir. 2005). The United States has represented that the evidence at trial would show that Adkins's pimp, Defendant Kenneth Britton, was involved in the prostitution of juveniles. (Doc. No. 514, at 4-5.) Furthermore, the United States represented that the evidence would establish both that Adkins regularly prostituted herself for Britton and wired him proceeds and funds derived from this unlawful conduct, and that pimps within the broader conspiracy were regularly involved in the prostitution of juveniles during the course of the conspiracy. (Id. at 5.) In open Court, Defendant waived her Fifth Amendment right against self-incrimination and pleaded guilty to being a participant in this conspiracy. Based upon Defendant's admission and plea, and upon consideration of the well-settled rule announced in Pinkerton regarding the liability of co-conspirators, the Court concludes that the fact that Defendant was allegedly not personally involved in the prostitution of juveniles does not support her request to withdraw her plea to being a participant in the charged conspiracies.[3] If the Government is able to demonstrate at sentencing that a preponderance of the evidence supports the guideline enhancement in question, and assuming that the Court finds for the Government on this point, there is no legal support for

---

[3] The Court's finding in this regard should not be misinterpreted by Defendant as foreclosing opportunity to argue against application of the cross-reference that the presentence report's author contends causes Adkins's guideline range to increase to 168-210 months.

4

Defendant's argument that she cannot be held accountable for her co-conspirators' conduct.

The Court is even less persuaded by Defendant's assertion that her use of psychotropic medication during the plea colloquy before the Court should invalidate the guilty plea.

Defendant's brief in support of her motion to withdraw her plea states as follows:

> Defendant has stated in her Motion that, at the time of the Plea Hearing, she was under the influence of three[] mood altering drugs, Lithium, Celexa and Remeron.  Further, she has stated that she was emotionally distraught at the time of the hearing because she had been deprived of direct contact with her two[] minor children for six months due to incarceration.  Because of these factors, she has averred that she was confused during her Plea Hearing and did not understand the consequences of her Plea.

(Doc. No. 494, at 2.)

A review of the Court's explicit colloquy with Defendant regarding her use of medication during her guilty plea hearing is appropriate:

Q.      Are you now under the care of a psychiatrist or a psychologist right now?

A.      Yes.

Mr. Foster:      Could I speak to my client for a minute?

(Mr. Foster and the defendant confer.)

Q.      You are seeking medical attention or psychiatric attention?

A.      Yes.

Q.      Tell me about that.

A.      I have anxiety and depression, and I take Celexa, Remeron, and lithium.

Q.      How do those drugs affect you?

A.      They basically calm me down so I can think.

Q.      Okay.

A.      I don't think of a whole bunch of stuff at a time.

Q.      So you're able to focus better?

A.      Right.

Q.      Would anything that you're taking keep you from thinking clearly and
        understanding these proceedings?

A       No.

Q.      In fact, from what you're telling me, they would do just the opposite, help you to
        better understand and comprehend what's going on?

A.      Yes.

Q.      Okay.  Are you taking any other prescription medications?

A.      No.

Q.      No?

A.      I take a thyroid, but that's ----

Q.      Okay.  Have you had a full opportunity to consult with Mr. Foster to discuss the
        nature of the charges brought against you and to discuss with him how best to
        respond to these charges?

A.      Yes.

Q.      You feel that you're prepared to go forward and you've had a full opportunity to
        consult with him?

A.      Yes.

Q.      Are you satisfied with his representation?

A.      Yes.

(Tr. at 5-6.)

        Defendant has offered nothing to support her new contention that the medications she had

been administered to help her cope with anxiety and depression actually impaired her ability to

think clearly during her change-of-plea hearing – a contention that is directly contrary to her sworn testimony.  The Court finds her recantation of her sworn testimony that such medication actually assisted her in these areas to be entirely unpersuasive.  The foregoing colloquy and the Court's own observation of Defendant's demeanor throughout the hearing undermines her argument that she was "confused and distraught" during the process.  Additionally, although the Court acknowledges that Defendant may have been saddened by her separation from her children for several months as the result of her incarceration, the Court does not perceive this as a basis for allowing Defendant to withdraw her plea and does not find that it caused her to be confused during the proceedings.

Finally, Defendant argues that the significant disparity between her anticipated sentence of 36-42 months and the recommended guideline range of 168-210 months set forth in the presentence report justifies allowing her to withdraw her plea.  Although the Court is surprised by the extraordinary divergence between these ranges, the Court does not find that the discrepancy entitles Defendant to withdraw her guilty plea in light of the Court's direct efforts to ensure that Defendant understood that her sentence would be determined by the Court and would not necessarily be limited to a sentence that she might have contemplated.  Again, review of the plea colloquy on this point is warranted:

> Q.    You understand that the agreement you have is with the Government and not with the Court?  In other words, Mr. Zubrod, as his part of the agreement, is going to make certain recommendations to the Court, such as a recommendation that you receive a three-level credit for acceptance of responsibility.  He can only recommend.  I, independently, will make a determination of whether or not you're entitled to that credit, and ultimately it will be I who decide what your sentence will be in this case.

> A.    Yes.

*       *       *

Q.    Have you talked with Mr. Foster about the sentencing guidelines and how they apply in your case?

A.    Yes.

Q.    So you understand that after you leave here, the probation office is going to conduct an investigation for me.  They're going to make a written report after this investigation.  That report will include everything about you, your personal background, your criminal history, if you had one before coming to court today, and everything about your school years, your financial background, your family history.  All of that will be included in a written report to me.  You and Mr. Foster are going to have a chance to see that report even before I do.  You'll have 14 days to comment on it, to challenge anything contained in the report, and even to offer information that you want included in the report that you think might reflect favorably on you.  Then you'll come back to court.  I'll get to see the report at that time, and appended to the report will be a calculation of sentencing guidelines.  That's the recommended guideline range that will apply in your case. There's a guideline range that's recommended to the judges based on a calculation based on your own criminal history, if you had one, and on the facts that bring you before the court.  Usually the range is a range of 24 months or two years.  So two years to four years, eight years to ten years, that's the range that's recommended.  And most of the time, if I find the sentence that's called for by application of the guidelines to be reasonable, I will sentence people within that guideline range that's recommended to me.  I don't know whether that would be true in your case, because in certain cases I will deviate from the guideline range. I'll sentence above the range or below the range based on the particular facts before me.  And on the history of the defendant.  I don't know anything about you today, so I don't know whether I would follow the guideline range that's recommended to me or not.  I only know this, and you know this, that I could never sentence you to more than the maximum penalty that's called for by the statutes.  And you've heard that in this case, that maximum penalty for the two offenses to which you now plead is a combination of 25 years' imprisonment and a fine of up to $750,000.  There's a good likelihood that your guideline range is going to be below that maximum sentence, but I don't know for a fact that that will be the case.  So I tell people, when they plead guilty, that all you can be sure of is that you would never receive more than the maximum penalty.  That's the only thing we know for sure.

And we also know, with certainty, that if you don't like the sentence you receive in the case, you'll not be able to change your mind, withdraw your guilty plea and get back all of the jury trial rights that we're discussing here this afternoon.  Is that understood?

8

A.     Yes.

Q.     Any questions about any of that?

A.     No.

(Tr. 11-14.)

As the foregoing demonstrates, the Court took care to explain to Defendant – and to

ensure that Defendant understood – that it would be the Court that ultimately determined what

sentence would be imposed as the result of Defendant's criminal activity.[4]  Additionally, the

Court specifically advised Defendant that the charges against her together carried a potential

maximum sentence of 25 years in prison and the imposition of a $750,000 fine.[5]  The Court is

satisfied that Defendant was adequately advised regarding the sentencing process that would

follow her guilty plea, and that she was sufficiently apprised of the fact that the charges to which

---

[4]  The Court notes that paragraph 14 of the plea agreement between Defendant and the
United States, which Defendant attested she understood and signed willingly and without
coercion (Tr. 11), evidenced Defendant's understanding of the potential sentence involved and
the fact that the Court alone would be responsible for determining Defendant's sentence: "The
defendant understands that the Court is not a party to and is not bound by this agreement nor any
recommendations made by the parties.  Thus, the Court is free to impose upon the defendant any
sentence up to and including the maximum sentence of imprisonment for 25 years, a fine of
$750,000, a maximum term of supervised release to be determined by the court, which shall be
served at the conclusion of and in addition to any term of imprisonment, the costs of prosecution,
denial of certain federal benefits and assessments totaling $200.00."  (Doc. No. 331, Plea
Agreement, ¶ 14.)

[5]  It bears mention that the Court has not yet had the benefit of reviewing the presentence
report that serves as the central basis for Defendant's motion to withdraw her guilty plea.
Therefore it is unknown whether Defendant may be able to marshal substantive arguments
against application of the particular cross-reference within the guideline range that was utilized
in the calculation of her recommended guideline range.  It also remains unclear whether the
Court will find that a guidelines sentence will apply in this case, and whether it applies or not,
exactly what sentence Defendant will receive for her participation in the criminal conspiracies to
which she has admitted being a participant.

she was pleading guilty carried with them a potential sentence of 25 years imprisonment. Defendant affirmed for the Court that she understood this reality regarding the sentencing process that would attend her guilty plea and the maximum penalties that could potentially result.  Additionally, it must be emphasized that Defendant came to open court and admitted under oath that she was guilty of the crimes of conspiracy to engage in interstate prostitution and conspiracy to engage in money laundering.  The Court finds that Defendant has failed to state sufficiently a fair and just reason for allowing her to withdraw her guilty plea.  An appropriate order, which will include a new date for sentencing, follows this memorandum.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 05-CR-443-16** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **TANA ADKINS,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

     **AND NOW**, this 19th day of January 2007, upon due consideration, and for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendant Tana Adkins's motion to withdraw her guilty plea (Doc. No. 344) is **DENIED**.

     **IT IS FURTHER ORDERED THAT** the Court will convene a hearing to impose sentence on Defendant on **Tuesday, February 20, 2007, at 2:00 p.m.** Sentencing will be held in the United States Federal Building, Courtroom 4, 228 Walnut Street, Harrisburg, Pennsylvania. A separate notice regarding this hearing will issue.


      S/ Yvette Kane
      Yvette Kane, Chief Judge
      United States District Court
      Middle District of Pennsylvania